IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

VANESSA HAKEEM, individually    *
and    as    the    putative    *
administrator of the Estate of    *
Hiawatha Hakeem,    *
                            *
        Plaintiff,          *        CV 623-028
                            *
                            *
            v.              *
                            *
BRIAN D. ADAMS, individually,    *
et al.,                         *
                            *
        Defendants.          *

---

**O R D E R**

---

Before the Court is Defendants' motion to dismiss. (Doc. 44.) After due consideration and for the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

At 7:34 p.m. on April 12, 2021, four inmates at Smith State Prison in Glennville, Georgia (the "Attackers"), brutally assaulted fellow prisoner Hiawatha Hakeem ("Hakeem"). (Doc. 35, at 39.) As a result, Hakeem sustained severe injuries, including stab wounds, and ultimately died at 10:12 p.m. (Id. at 39-40.) According to Plaintiff, during the time between his attack and his death, Hakeem and other prisoners sought medical attention from employees at the prison, including Defendants Dick, Griffin, Mikell, Roberts, Robinson, and Rubin (collectively, the "On-duty

Defendants"). (Id.) Plaintiff alleges the On-duty Defendants flatly ignored the requests and "failed to provide timely and adequate care to [Hakeem] to prevent life-threatening complications from his injuries." (Id. at 40.)

Plaintiff alleges that all named Defendants were aware the Attackers had a history of violent behavior, and in the 366 days prior to the attack on Hakeem, four inmate-on-inmate murders occurred at Smith State Prison.[1] (Id. at 40-41.) Plaintiff further alleges that on the night of the attack, despite being aware of these dangerous conditions, the On-duty Defendants "failed to be attentive to security risks," "remained at their posts too long," "failed to be alert to the behavioral changes of [the Attackers]," and "failed to make sure that the locks on cells were in place." (Id. at 45-46.) Plaintiff also asserts Hakeem was aware one or more of the On-duty Defendants was engaged in a contraband scheme at Smith State Prison, and because of this knowledge, the On-duty Defendants "acted in concert with the [Attackers] allowing them to have access to [Hakeem] in order to cause him harm." (Id. at 51.)

---

[1] After briefing on the instant motion, Plaintiff filed a "Notice of Supplemental Authority," with the Department of Justice's Report on Georgia's Prisons attached. (Doc. 60.) Plaintiff urges the Court to consider the report in ruling on Defendants' motion to dismiss because it "supports the viability of Plaintiff's [Complaint]," namely, the widespread constitutional violations alleged therein. (Id. at 12.) However, because the Court accepts as true the well-pled facts alleged in the Complaint and finds they support finding unconstitutionally dangerous conditions and a history of widespread abuse, the Court declines to consider the report. As such, the Court does not consider whether review of the report would result in this motion being converted to one for summary judgment.

Following Hakeem's death, Plaintiff, Hakeem's natural parent and sole survivor, filed this action to bring claims for various constitutional violations. (Doc. 1.) Plaintiff subsequently filed an amended complaint (Doc. 18), and on February 1, 2024, the Court determined Plaintiff's amended complaint was a shotgun pleading and instructed Plaintiff to file a second amended complaint. (Doc. 34.) Plaintiff timely filed a second amended complaint (the "Complaint"). (Doc. 35.) In addition to claims for constitutional violations against the On-Duty Defendants, the Complaint alleges separate constitutional violations by Defendant Adams, the warden of Smith State Prison during the relevant time, and Defendants Jarriel, Brown, Cox, and McFarlane, all of whom were deputy wardens at Smith State Prison during the relevant time (the warden and deputy wardens, collectively, the "Supervisor Defendants"). (Id.) On March 21, 2024, Defendants filed a motion to dismiss (Doc. 44). Plaintiff filed a response in opposition (Doc. 47), Defendants filed a reply (Doc. 51), and Plaintiff filed a sur-reply (Doc. 52). On July 31, 2024, while the motion to dismiss was pending before the Court, Defendants filed a notice of supplemental authority. (Doc. 55.) Shortly thereafter, on August 27, 2024, Plaintiff filed a notice of supplemental authority (Doc. 56), and Defendants filed a response (Doc. 57). On October 21, 2024, Plaintiff filed another notice of supplemental authority (Doc. 60), to which Defendants also filed a response (Doc. 61).

3

Defendants' motion to dismiss is now ripe for the Court's consideration.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Conclusory allegations, however, "are not entitled to an assumption of truth—

---

[2] Although the Eleventh Circuit previously employed a "heightened pleading standard" for "section 1983 cases where qualified immunity was at issue," Harper v. Lawrence Cnty., 592 F.3d 1227, 1233 (11th Cir. 2010), such cases are now "held to comply with the standards described in Iqbal," Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010); see also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016).

legal conclusions must be supported by factual allegations." Randall, 610 F.3d at 709-710 (11th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court may not reasonably infer the defendant is liable when the well-pleaded facts fail to show "more than the mere possibility of misconduct." Id. at 679; see Patton v. Rowell, 678 F. App'x 898, 900 (11th Cir. 2017) ("factual allegations must be enough to raise a right to relief above the speculative level") (citation omitted).

## III. DISCUSSION

Defendants argue the claims against them should be dismissed for two reasons: first, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and second, under the doctrine of qualified immunity.[3]  (Doc. 44-1, at 5-15.)  As discussed below, in determining whether qualified immunity applies, the Court must also analyze whether Plaintiff validly

---

[3] In their reply, Defendants also assert the Complaint should be dismissed as a shotgun pleading. (Doc. 51, at 4-6.) Despite Defendants' failure to raise this argument in their motion to dismiss (Doc. 44-1), given the procedural history of this action, the Court briefly addresses this argument. In the Court's February 1, 2024 Order, it discussed the standards surrounding shotgun pleadings at length and found Plaintiff's amended complaint was a shotgun pleading for two reasons: (1) the individual counts incorporated all preceding paragraphs, and (2) each claim was not separated into an independent count. (See Doc. 34.) The Complaint has cured both deficiencies. (See Doc. 35.) Thus, despite its extensive length and many rote repetitions, the Court finds the Complaint need not be dismissed as a shotgun pleading and instead addresses the merits of Defendants' motion to dismiss.

states a claim under the Eighth Amendment. GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) (noting that, at motion to dismiss stage, "qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined"), *overruled on other grounds by* Randall, 610 F.3d 701; Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995). Thus, although Defendants separately present their arguments, the Court analyzes them together.

## A. Qualified Immunity

"Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation and internal quotation marks omitted). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alteration and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). Because "[t]he line between lawful and unlawful conduct is often vague," qualified immunity "demands that a bright line be crossed." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1558 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (citation omitted). Courts then utilize a two-part framework to evaluate the qualified immunity defense. First, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id. Depending on the unique circumstances of each case, however, courts are "permitted to exercise their sound discretion" to decide which of the Saucier prongs should be

addressed first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009);

accord Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

In 42 U.S.C. § 1983 suits, "the qualified immunity inquiry

and the Rule 12(b)(6) standard become intertwined."  GJR Invs.,

Inc., 132 F.3d at 1366 (citations omitted), overruled on other

grounds by Randall, 610 F.3d 701; accord Wooten, 49 F.3d at 699.

To protect public officials from meritless claims, the complaint

must contain "specific, non-conclusory allegations of fact that

will enable the district court to determine that those facts, if

proved, will overcome the defense of qualified immunity."

Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (citation

omitted); see also Staco v. Miami-Dade Cnty., 536 F.Supp.2d 1301,

1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a

plaintiff pleads facts or makes admissions that demonstrate that

a defense is applicable on the face of the pleadings.") (citing

Marsh v. Butler Cnty., 268 F.3d 1014, 1022 (11th Cir. 2001)).

Thus, "[i]f a defendant asserts a qualified immunity defense in a

Rule 12(b)(6) motion to dismiss, the Court should grant qualified

immunity if the plaintiff's complaint fails to allege a violation

of a clearly established constitutional or statutory right."

Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282,

1300 (11th Cir. 2007) (citation omitted).

8

**B. Count One: Failure to Protect – Dangerous Conditions**

Count One asserts the On-duty Defendants violated the Eighth Amendment by failing to protect Hakeem under a "dangerous conditions" theory.[4] (Doc. 35, at 43-47.) Defendants address Counts One and Two together, arguing Plaintiff fails to state a claim under either because she does not allege the On-duty Defendants were aware of a particularized threat or that their actions constituted anything more than mere negligence. (Doc. 44-1, at 6-9.) However, the Counts are brought under alternative theories, so the Court addresses them separately.

Because it is undisputed the On-Duty Defendants acted within their discretionary authority at all relevant times, the burden is on Plaintiff to show qualified immunity is inappropriate. (Doc. 44-1, at 15; Doc. 47, at 24-25.) The Court first determines whether Plaintiff sufficiently alleges a constitutional violation, then whether the right violated was clearly established at the time. Underwood v. City of Bessemer, 11 F.4th 1317, 1328 (11th Cir. 2021).

---

[4] In the Complaint Plaintiff refers to Count One as a "Failure to Protect from On-Going Inmate on Inmate Violence" claim. (Doc. 35, at 43.) However, in her briefings, she refers to Count One as a failure to protect claim based on a "dangerous-conditions theory." (Doc. 47, at 5.) Claims brought under this theory have also been labeled "excessive risk of inmate violence" claims. See Purcell ex rel. Est. of Morgan v. Toombs Cnty., 400 F.3d 1313, 1320 (11th Cir. 2005). For the sake of brevity and clarity, this Order refers to Count One as being brought under a "dangerous conditions" theory.

1. Constitutional Right

The Eighth Amendment not only prohibits prison officials from inflicting "cruel and unusual punishment" upon inmates, it also imposes upon prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted).  To guarantee inmate safety, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted and alteration adopted); see also Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam). However, while officers can be liable for failing to prevent a prisoner-on-prisoner attack, not "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials responsible for the victim's safety." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting Farmer, 511 U.S. at 834); see also Purcell, 400 F.3d at 1321 ("[A] prison custodian is not the guarantor of a prisoner's safety.") (citation and internal quotation marks omitted).  Rather, "[o]nly a prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." Culliver, 746 F.3d at 1298 (citation and internal quotation marks omitted).  Consequently,

> to state an Eighth Amendment claim premised on a failure
> to prevent harm, a plaintiff must allege facts showing
> that: (1) a substantial risk of serious harm existed;

10

(2) the defendants were deliberately indifferent to that
risk, i.e., they both subjectively knew of the risk and
also disregarded it by failing to respond in an
objectively reasonable manner; and (3) there was a
causal connection between the defendants' conduct and
the Eighth Amendment violation.

Bowen, 826 F.3d at 1320.

   a. *Substantial Risk of Serious Harm*

Courts apply an objective standard when determining if a
substantial risk of serious harm exists. Caldwell v. Warden, FCI
Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (citation omitted);
Purcell, 400 F.3d at 1321. A substantial risk exists if there is
a "strong likelihood of injury, rather than a mere possibility."
Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015) (internal
quotation marks and citation omitted); see Purcell, 400 F.3d at
1323 ("In the jail setting, a risk of harm to some degree always
exists by the nature of its being a jail." (citing Wilson v.
Seiter, 501 U.S. 294, 298 (1991))). The fact that the violence
occurred, on its own, is not enough for courts to find a
substantial risk of harm. Brooks, 800 F.3d at 1301 ("The mere
fact that an event takes place does not indicate how likely it was
to occur. A risk calculation is a prospective determination of
what might happen based upon events that have already occurred.").
A plaintiff may prove there was a substantial risk of harm by
showing either (1) a particularized threat of harm to the
plaintiff, or (2) generalized conditions of dangerousness. Hinton

11

v. Grieco, CV 522-16, 2025 WL 349722, at *5 n.8 (S.D. Ga. Jan. 30, 2025) (citing Bugge v. Roberts, 430 F. App'x 753, 758-59 (11th Cir. 2011)).

Plaintiff contends the dangerous conditions at Smith State Prison, evidenced by four inmate-on-inmate murders in the last year, establish a substantial risk of serious harm under the second theory. (Doc. 47, at 6-10.) Defendants argue this dangerous conditions theory is exclusively a supervisory liability theory and is therefore inapplicable to the On-duty Defendants. (Doc. 51, at 9-10.)

As an initial matter, the Court finds Defendants misunderstand the relevant law. Ample case law in this Circuit makes clear a plaintiff may show a substantial risk of serious harm in the context of establishing personal liability for failure to protect under either a particularized threat or a dangerous conditions theory, regardless of the defendant's supervisory status. See, e.g., Barefield v. Dunn, 688 F. Supp. 3d 1026, 1056 (M.D. Ala. Aug. 22, 2023) ("[The] supervisory-causal-connection framework supplements (not supplants) the general rule that officials, whether or not they bear the title of supervisor, may be held liable for their own unconstitutional conduct"); Hinton, 2025 WL 349722, at *5 n.8 (citing dangerous conditions as an alternative theory in personal liability context); Est. of Owens v. GEO Grp., 660 F. App'x 763, 769-72 (11th Cir. 2016) (applying

12

dangerous conditions theory to claim against prison teacher and security guard); Bugge, 430 F. App'x at 759-60 (applying dangerous conditions theory to claim against wardens, lieutenants, and officers without regard to each individual's authority to change prison policies). In determining causation, the third element of a failure to protect claim, whether a guard had authority over the relevant condition may determine the viability of the claim; however, establishing a substantial risk of harm via this theory is not wholly limited to supervisors. See Bugge, 430 F. App'x at 760 (explaining that when a guard was not responsible for and was unable to take steps to lessen the risk of harm created by systemic conditions, he could not have caused the conditions).

Moving to the alleged dangerous conditions, the Court finds Plaintiff pled facts sufficient to establish a substantial risk of serious harm. Under the dangerous conditions theory, the Eleventh Circuit has upheld the denial of a motion to dismiss because the complaint alleged sufficient facts that, if true, established a substantial risk of inmate-on-inmate violence. Marsh, 268 F.3d at 1029. Such facts include allegations of conditions of overcrowding, understaffing, failure to segregate various classifications of inmates, failure to limit contraband, broken locks on cell doors, weapons being readily available to inmates, failure to punish inmates, and regular violence among inmates. See id. at 1029 (alleging overcrowding, lack of screening and

segregation of inmates, understaffing, broken locks, inadequate supervision, and lack of discipline); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581-84 (1995) (alleging no segregation of violent and nonviolent inmates, understaffing, inadequate supervision, and regular fights among inmates); but see Purcell, 400 F.3d at 1321-23 (finding no substantial risk when jail implemented inmate segregation policy and was adequately staffed, previous inmate fights were irregular and not linked to a recurring cause, and jail officers followed disciplinary procedures). A plaintiff may also establish a substantial risk of serious harm by alleging a generalized risk of violence without other specific features if "the risk was so great it was something close to normalized violence or a reign of terror." Dickinson v. Cochran, 833 F. App'x 268, 275 (11th Cir. 2020) (citation omitted). Compare Marbury v. Warden, 936 F.3d 1227, 1235 (11th Cir. 2019) (finding plaintiff's statement that he witnessed 2.5 stabbings per year insufficient to show "that serious inmate-on-inmate violence was the norm or something close to it") (citation and internal quotation marks omitted) with Barefield, 688 F. Supp. 3d at (finding allegations of fifty-four inmate-on-inmate assaults per month, which was ten times more than the national average in male prisons, sufficient to show violence was the norm).

According to the Complaint, four inmate-on-inmate murders occurred at Smith State Prison from April 10, 2020 to April 10,

2021, giving it a homicide rate 31.5 times greater than that of the State of Georgia. (Doc. 35, at 6-7.) This murder rate, combined with the Attacker's alleged "history of violence," suggests a multitude of non-fatal attacks occurred during this timeframe as well. (See id. at 41.) In Marbury, the plaintiff alleged fifteen stabbings over an unspecified period, potentially over a span of up to six years, and the Court found the level of violence insufficient to be considered "normalized." 936 F.3d at 1234. Here, Plaintiff alleges not only much more frequent attacks—four in one year—but also more severe attacks, resulting in the loss of life. (Doc. 35, at 6.) The level of violence alleged here is also far greater than that alleged in Purcell, where the plaintiff alleged only a "few serious fights" over nine months. 400 F.3d at 1322. Thus, unlike Marsh and Purcell, which alleged only occasional, non-fatal, violent incidents, Plaintiff alleges sufficient instances of the most severe form of violence — inmate-on-inmate murders — in the year leading up to the attack on Hakeem. The Court finds such allegations sufficient to plausibly allege "normalized violence." Moreover, even if this level of violence is not enough to be considered "normalized," Plaintiff also alleges specific features of the prison that increased the risk of violence on the day Hakeem was killed, including cells remaining unlocked and inadequate supervision. (Doc. 35, at 45-46.) Considering all of this together, Plaintiff plausibly alleges an objectively

substantial risk of serious harm due to the dangerous conditions
at Smith State Prison.

b. *Deliberate Indifference*

The second element — the defendants' deliberate indifference
to the risk — has both a subjective and an objective component: it
requires the plaintiff to produce evidence that the defendant (1)
"actually (subjectively) knew that an inmate faced a substantial
risk of serious harm" and (2) "disregarded that known risk by
failing to respond to it in an (objectively) reasonable manner."
Caldwell, 748 F.3d at 1099 (alterations adopted and citation
omitted). To demonstrate the subjective component, the plaintiff
must show "the defendant actually knew that his conduct – his own
acts or omissions – put the [victim] at substantial risk of serious
harm." Wade v. McDade, 106 F.4th 1251, 1253 (11th Cir. 2024). In
other words, the plaintiff must show the defendant acted with
criminal recklessness. Id. at 1257 (citations omitted). To
demonstrate the objective component, a plaintiff must show the
defendants disregarded the known risk by not responding in an
objectively reasonable manner. Caldwell, 748 F.3d at 1099.

Plaintiff argues the On-duty Defendants' subjective awareness
can be inferred because the risk of further violence was obvious.
(Doc. 47, at 10-12.) Defendants argue Plaintiff fails to establish
subjective awareness because she has not pled the On-duty
Defendants were aware of a particularized threat against or fear

16

felt by Hakeem. (Doc. 44-1, at 7.) However, contrary to Defendants' assertions, "an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault." Hale, 50 F.3d at 1583 (citing Farmer, 511 U.S. at 843). Rather, under the dangerous conditions theory, a plaintiff need only show the prison official "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." Id. (citing Farmer, 511 U.S. at 843).

The Court finds Plaintiff plausibly alleges the On-duty Defendants were subjectively aware their conduct had a substantial risk of causing serious harm. Plaintiff alleges the On-duty Defendants were aware of the regularly occurring inmate-on-inmate murders by virtue of their employment at Smith State Prison. (Doc. 35, at 45.) Plaintiff supports this assertion by alleging it is Smith State Prison's policy that the Regional Director disseminate a report following each "major incident" at the prison, including inmate-on-inmate murders. (Id. at 6.) Plaintiff further alleges the On-duty Defendants, despite knowing of the regularly occurring violence, failed to check that cell locks were in place and failed to properly monitor the area of the prison where Hakeem was housed by remaining at their posts for too long. (Id. at 45.) The risk that arises from failing to check cells are locked and,

additionally, failing to monitor inmates known to be violent in a prison where violence runs rampant is obvious. Thus, it can be inferred the On-duty Defendants were subjectively aware of the risk their own conduct, or lack thereof, created.

Turning to the objective component, Plaintiff alleges the On-duty Defendants did not properly supervise the inmates or check the cell's locks. (Doc. 35, at 45-16.) Defendants argue these inactions constitute, at most, gross negligence and cannot be the basis for a deliberate indifference claim. (Doc. 44-1, at 8 (citing Goodman v. Kimbrough, 718 F.3d 1325, 1322-34 (11th Cir. 2013)).) Plaintiff argues the On-duty Defendants' failures to act were objectively unreasonable given the known level of violence at the prison. (Doc. 47, at 12-14.)

The Court finds the failure of the On-duty Defendants to properly supervise inmates or check cell locks in the face of known regular violence was objectively unreasonable. In Goodman, the court found similar conduct by prison guards-failing to lock doors or check on inmates-was grossly negligent. 718 F.3d at 1334. However, that finding pertained to whether defendants knew of the risk. Id. The Goodman court held that no matter how negligent those omissions were, they did not prove the guards *knew* of a risk. Id. The court did not hold these actions were objectively reasonable in the face of a known risk. Id. Here, unlike in Goodman, it is alleged the On-duty Defendants engaged in this

conduct despite being aware of regular inmate-on-inmate violence at the prison.    (Doc. 35, at 45.)    Such failure to properly confine inmates or monitor cells despite a known prevalence of violence has been held to be objectively unreasonable. See Marsh, 268 F.3d at 1028 (finding lack of working locks objectively unreasonable in face of a known risk); Walton v. Dawson, 752 F.3d 1109, 1120 (8th Cir. 2014) (finding failure to check lock or monitor cells potentially fell below constitutional standards). Thus, Plaintiff alleges sufficient facts to show the On-Duty Defendants were aware of the risk and disregarded it.

    c. *Causation*

    Finally, to prevail on a failure to protect claim Plaintiff must show "a causal connection between the defendants' conduct and the Eighth Amendment violation." Bowen, 826 F.3d at 1320. To establish causation, a plaintiff must show "the prison official (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from the violence, and (3) had other means available to him which he nevertheless disregarded." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 622 (11th Cir. 2007) (citation and internal quotation marks omitted and alterations adopted).    The inquiry largely turns on the defendants' "duties, discretion, and means." Id. Because of this, "[t]he lion's share of viable [dangerous conditions] claims has

been typically brought against such capable defendants: sheriffs, wardens, and overarching prison-system officials." Barefield, 688 F. Supp. 3d at 1088 (citations omitted). "Though, of course, [a lower level] guard still may be liable for a *specific* failure-to-protect claim based on his specific conduct in the context of his knowledge that an excessive risk of inmate violence pervades the institution." Id. at 1087 (citations omitted).

Defendants contend the On-duty Defendants did not cause the dangerous conditions because they lacked the authority to change any deficient conditions. (Doc. 51, at 9.) However, this is not a case where the On-duty Defendants, as lower-level employees, lacked responsibility for systemic conditions that made Smith State Prison particularly dangerous and therefore could not change them. See, e.g., Barefield, 688 F. Supp. 3d at 1075-76 (finding low-level officers had no authority to address specific features making the prison dangerous such as understaffing, overcrowding, broken locks, and poor classification policies). Rather, Plaintiff's claim alleges the On-duty Defendants' *specific conduct* of failing to lock doors and supervise inmates despite a known excessive risk of violence violated the Eighth Amendment. (Doc. 35, at 45-46.) Thus, Plaintiff plausibly alleges the conditions created by the On-duty Defendants' *specific conduct*, rather than systemic conditions of the prison, caused the constitutional violations and, more generally, plausibly alleges a failure to protect claim in Count

20

One.   Nonetheless, Plaintiff must also show this right was clearly established.

## 2. Clearly Established

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  Put another way, "the state of the law at the time of the incident" must have given the defendant "fair warning" of the unconstitutionality of his conduct. Callwood v. Jones, 717 F. App'x 552, 559 (11th Cir. 2018) (citation and internal quotation marks omitted). The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted).

Plaintiff argues the On-duty Defendants are not entitled to qualified immunity because the law is clearly established. (Doc. 47, at 24-25.)  In making this argument, Plaintiff relies on Dickinson to show it is clearly established that "failure to correct known inmate-on-inmate abuse" violates a constitutional

21

right.   (Id. at 24 (citing Dickinson, 833 F. App'x at 275).)
However, the plaintiff in Dickinson showed a substantial risk
existed by alleging various systemic conditions in addition to
historic violence, including "overcrowding, failure to identify
and segregate violent inmates, failure to properly search inmates,
failure to limit contraband, and failure to adequately supervise
inmates," and the claim was brought against supervisory
individuals with authority to change such conditions.  833 F. App'x
at 273, 275.  Here, on the other hand, beyond a history of recurring
violence, Plaintiff has identified no systemic features making the
generalized risk of violence more likely.   (See Doc. 35.)
Plaintiff has not identified, nor has the Court, any materially
similar binding case law.   While Marbury and Purcell suggest
allegations that "violence [i]s the norm," without other systemic
features being alleged, may be enough, they do not clearly
establish a level of violence that would meet this threshold.
Marbury, 936 F.3d at 1235; Purcell, 400 F.3d at 1322.  As such,
Plaintiff has not identified a materially similar case that would
give Defendants notice, nor has Plaintiff shown a broader, clearly
established principle or conduct so obvious it violates a
constitutional right.   Because Plaintiff has not carried its
burden, the On-duty Defendants are entitled to qualified immunity
and Defendants' motion to dismiss Count One is **GRANTED**.

22

**B. Count Two: Failure to Protect – Particularized Threat**

Count Two brings a failure to protect claim against the On-duty Defendants based on the same conduct as Count One. (Doc. 35, at 48.)  However, unlike Count One, Count Two is brought under a particularized threat theory. (Id. at 48-50.)  Defendants again argue this claim should be dismissed because Plaintiff fails to state a claim and because the On-duty Defendants are entitled to qualified immunity. (Doc. 44-1, at 6-10, 15.)  Because it is undisputed the On-duty Defendants were acting within their discretionary authority (Doc. 44-1, at 15; Doc. 47, at 24-25), the burden is on Plaintiff to show a constitutional violation, and that the right violated was clearly established. Underwood, 11 F.4th at 1328.

1. Constitutional Violation

As laid out in greater detail above, to prevail on a failure to protect claim, Plaintiff must allege (1) a substantial risk of serious harm; (2) the On-duty Defendants were deliberately indifferent to that risk; and (3) a causal connection between that indifference and the harm suffered. Bowen, 826 F.3d at 1320.

In Count Two, Plaintiff argues the first element, a substantial risk of serious harm, is alternatively met under the particularized threat theory. (Doc. 35, at 48.)  Defendant argues Plaintiff fails to state a claim under this theory because she has

not pled the On-duty Defendants were aware of a particularized threat or fear felt by Hakeem. (Doc. 44-1, at 7.)

To sufficiently allege there was a substantial risk of harm based on a particularized threat, a plaintiff may show "[the victim] was the target of a specific threat or danger, and that [the defendants] subjectively were aware of the individualized danger, yet they failed to act to alleviate that risk." Estate of Owens v. CEO Group, Inc., 660 F. App'x 763, 769 (11th Cir. 2016). To meet this standard, the plaintiff must allege "much more than mere awareness of [the assailant's] generally problematic nature;" rather, she must show the defendants were "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and [defendants] must also draw that inference." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting Farmer, 511 U.S. at 837) (internal quotations omitted) (alterations adopted).

Plaintiff argues she alleged the On-duty Defendants were aware of a particularized threat because she alleges they "worked in close proximity to the [A]ttackers," "Hakeem knew of [the On-duty Defendants'] role in the contraband scheme," "the [O]n-duty Defendants targeted him for this reason," and "the [On-duty] Defendants took *no* actions to prevent harm to . . . Hakeem." (Doc. 47, at 16.) However, none of these allegations show the On-duty Defendants had a "belief, suspicion, knowledge, or inclination"

24

the Attackers posed a specific threat to Hakeem.    See Estate of
Owens, 660 F. App'x at 770.    Unlike cases where awareness of a
particularized threat was found, none of these allegations show a
problematic past between Hakeem and his Attackers, any sort of
complaint or fear expressed by Hakeem about his Attackers, or
anything from which the On-duty Defendants could have inferred the
Attackers posed a threat to Hakeem specifically.    Compare
Rodriguez, 508 F.3d at 617 (finding jury question as to subjective
knowledge of a particularized threat when victim repeatedly
informed defendants that members of his former gang threatened
him) with Marbury, 936 F.3d at 1237 (finding victim's statements
that an unnamed inmate threatened to harm him insufficient to put
defendants on notice of substantial risk of serious harm) and
Carter, 352 F.3d at 1349-50 (finding plaintiff's statements his
attacker, his cellmate, was "acting crazy, wanting to fake a
hanging, and [stating] that Plaintiff would help in the fake
hanging 'one way or another'" insufficient to put defendants on
notice of a particularized threat or fear felt by plaintiff).

Plaintiff's allegation that the Attackers had a history of
violence is not sufficient to establish the On-duty Defendants'
subjective knowledge, as more than allegations of a "generally
problematic nature" are necessary.    Carter, 352 F.3d at 1350.    Nor
is Plaintiff's allegation the On-duty Defendants "overheard or
learned of information" sufficient, as it fails to specify any

information that would put them on alert of a threat to Hakeem specifically. (Doc. 35, at 48.) This contention, if anything, concedes a lack of awareness of a *specific* threat to Hakeem, as it reads, "the [O]n-duty Defendants knew [the Attackers] posed a substantial risk of serious harm to other inmates, *including but not limited to [Hakeem]*." (Id. (emphasis added).)

Thus, Plaintiff fails to allege there was a particularized threat to Hakeem of which the On-duty Defendants were aware. Without showing such awareness, the On-duty Defendants' various alleged failures to act, outlined above, amount to no more than negligence. See Goodman, 718 F.3d at 1334. As such, Plaintiff fails to state a claim for failure to protect under a particularized threat theory, and Defendants' motion to dismiss Count Two is **GRANTED**. Because Plaintiff fails to state a claim, the Court does not address whether the right was clearly established.

## C. Count Five: Failure to Protect — Supervisory Liability[5]

Count Five asserts a claim against the Supervisor Defendants for failure to protect Hakeem under a supervisory liability theory. (Doc. 35, at 54.) To bring a section 1983 claim under a supervisory liability theory, a plaintiff must allege

> (1) the supervisor's personal involvement in the violation of [the victim's] constitutional rights, (2) the existence of a custom or policy that resulted in

---

[5] In an effort to follow the Parties' briefings, the Court addresses Count Five prior to Counts Three and Four.

> deliberate indifference to the [victim's] constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citation omitted). "[T]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003), *abrogated in part on other grounds by* Randall, 610 F.3d 701.

Defendants argue Plaintiff fails to state a claim for two reasons: first, because she has not shown a causal connection between any of the Supervisor Defendants' actions and the alleged constitutional violation, and second, because the Supervisor Defendants are entitled to qualified immunity. (Doc. 44-1, at 9-11, 15.) Plaintiff argues she has properly alleged both "a custom and policy that resulted in deliberate indifference to the plaintiff's constitutional right" and "a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." (Doc. 47, at 18.) The Court addresses each theory in turn.

1. Custom or Policy

Defendants argue Plaintiff's claim fails to allege that a custom or policy resulted in deliberate indifference to Hakeem's

constitutional rights because Plaintiff fails to allege any facts regarding the cause of the four prior murders, what specific policies and procedures needed to be changed because of them, or how any change in the policies and procedures would have prevented Hakeem's death. (Doc. 44-1, at 10-11.) Plaintiff argues she has sufficiently alleged the Supervisor Defendants acted pursuant to a custom or policy because the Supervisor Defendants collectively failed to take corrective actions in response to the inmate-on-inmate violence at Smith State Prison, and thus it can be inferred they were driven by a collective decision. (Doc. 47, at 18-19.)

The Court agrees with Defendants. Plaintiff fails to cite any case law to support her contention that a custom or policy can be inferred from the Supervisor Defendants' uniform inaction, and instead relies on authority finding a causal connection may be inferred from a widespread history of abuse. (See id. at 18-19; Doc. 52, at 10-11.) While the Complaint makes the conclusory allegation that the Supervisor Defendants "failed to implement policies and procedures to abate the substantial risk of serious harm," this is not enough. See Barr, 437 F. App'x at 876 (holding plaintiff failed to state a claim because he "failed to identify the purported policies or customs by which [the defendant] allegedly infringed on his rights") (citing Twombly, 550 U.S. at 570). Also insufficient are Plaintiff's allegations that the Supervisor Defendants failed to properly investigate the causes of

the four prior murders.  See Marbury, 936 F.3d at 1237 (finding allegations of failure to investigate insufficient to support a deliberate indifference claim).  Plaintiff fails to identify any policy under which the Supervisor Defendants acted or that condoned Hakeem's alleged constitutional deprivation.  Therefore, she has failed to plead the existence of a custom or policy that led to a deprivation of Hakeem's constitutional rights.

### 2. Widespread Abuse

Defendants also argue Plaintiff does not adequately allege the Supervisor Defendants failed to act despite being on notice of a history of widespread abuse because the four prior murders were insufficient to constitute widespread abuse.  (Doc. 44-1, at 10.) Plaintiff argues the four murders were sufficient to put the Supervisor Defendants on notice of the existing inadequacies, and that the Supervisor Defendants failed to change any policy or procedure despite such notice.  (Doc. 47, at 17-19.)

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Keith v. DeKalb Cnty., 749 F.3d 1034, 1048 (11th Cir. 2014) (citation omitted).  The standard for determining whether such widespread abuse exists is largely the same as that discussed above in determining if there was a substantial risk of harm under a dangerous conditions theory.  See Barefield, 688 F.

Supp. 3d at 1064, n. 17; <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1271-75 (11th Cir. 2007) (finding supervisor on notice of widespread abuse when a specific guards' problematic behavior was repeatedly brought to his attention and he received copies of all complaints of inmate abuse).

Accordingly, for the reasons discussed above, Plaintiff has plausibly alleged a history of widespread abuse sufficient to put the Supervisor Defendants on notice by alleging four inmate-on-inmate murders in the prison they supervised during the year preceding Hakeem's death.[6]    (Doc. 35, at 40, 55).    Moreover, Plaintiff extensively alleges the Supervisor Defendants were aware of these murders by virtue of their positions at Smith State Prison and the prison's policies, but they nevertheless failed to change any policies or procedures at the prison despite having the authority and duty to do so.    (<u>Id.</u> at 58-111.)    Thus, Plaintiff sufficiently stated a claim for failure to protect against the Supervisor Defendants.

Nonetheless, for the same reasons discussed above, Plaintiff fails to carry her burden of showing this right was clearly

---

[6] Notably, the claim against the Supervisor Defendants is weaker than that against the On-duty Defendants, as the Complaint fails to identify any systemic conditions within the Supervisor Defendants' control which render Smith State Prison particularly violent.    It also fails to allege the Supervisor Defendants were aware of the On-duty Defendants' failure to lock cells or monitor the area of the prison where Hakeem was housed.    Nonetheless, as stated above, the level of violence alleged alone plausibly shows the Supervisor Defendants were aware of conditions within their control leading to such violence, and their failure to take corrective action could be found unconstitutional.    <u>See Dickinson</u>, 833 F. App'x 268, 275.

established.    Plaintiff relies on case law that alleges various systemic conditions within supervisory officials' control, namely, understaffing and overcrowding, in addition to historic violence to establish supervisory liability for failure to protect.  (Doc. 47, at 24.)  Plaintiff has not identified, nor is the Court aware of, any cases holding supervisory officials liable for a failure to protect claim where, as here, only a generalized risk due to regular violence is alleged.  Thus, because Plaintiff has not shown a materially similar case; a broader, clearly established principle; or conduct so obvious it violates a constitutional right, Plaintiff has not carried her burden, and the Supervisor Defendants are entitled to qualified immunity.  Defendants' motion to dismiss Count Five is therefore **GRANTED**.

## D. Count Three: Intentional Acts

Count Three brings a claim pursuant to section 1983 for "Intentional Acts by [the On-duty Defendants]."  (Doc. 35, at 50.) Specifically, Plaintiff alleges the On-duty Defendants violated Hakeem's Eighth Amendment rights by "act[ing] in concert with [the Attackers] allowing them to have access to [Hakeem] in order to cause him harm."  (Id. at 51.)  Defendants argue these allegations are too vague to properly state a claim for deliberate indifference or conspiracy.  (Doc. 44-1, at 12; Doc. 51, at 12-13.)  Plaintiff argues this claim sufficiently alleges the On-duty Defendants' intentional conduct of "intending to harm" Hakeem,

31

"communicat[ing] inside of the prison" and "then allow[ing] an assault to occur" constitutes cruel and unusual punishment. (Doc. 52, at 12-13.)

The Court finds Plaintiff fails to plead sufficient facts to support Count Three. It is well established that "[t]he unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citation omitted and alterations adopted). "[W]hen prison officials are deliberately indifferent, through intentional acts or reckless disregard to prisoner's rights," they have violated the Eighth Amendment. Falls v. Nesbitt, 966 F.2d 375, 380 (8th Cir. 1992).

If the On-duty Defendants took affirmative steps to work with the Attackers and encourage them to beat Hakeem because of his alleged knowledge of their involvement in a contraband scheme, this would almost certainly violate the Eighth Amendment. However, Plaintiff fails to plead sufficient facts to support such. See Twombly, 550 U.S. at 570. Plaintiff alleges only that the On-duty Defendants "acted in concert with" the Attackers. (Doc. 35, at 51.) However, despite Plaintiff's contention, the Complaint fails to allege any communications, interactions, or other factual basis for the assertion that the On-duty Defendants were somehow working with the Attackers. (See id.) Thus, because Plaintiff fails to make any non-conclusory allegations of some agreement between the

32

On-duty Defendants and the Attackers, Defendants' motion to dismiss Count Three is **GRANTED**. See Johnson v. Warden, 491 F. App'x 60, 62 (11th Cir. 2012) (affirming summary judgment in defendants' favor when the only evidence of an agreement among the defendants to violate constitutional rights was conclusory); Allaben v. Howanitz, 579 F. App'x 716, 719 (11th Cir. 2014) (finding plaintiff failed to plead a conspiracy between officials and private individuals because she did not allege they "reached an understanding" to deny constitutional rights, or willfully participated in or were aware of the conspiracy (citations omitted)).

## E. Count Four: Deliberate Indifference to Serious Medical Need

Finally, Count Four brings a claim against the On-duty Defendants for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Doc. 35, at 52-53.) Defendants argues this claim should be dismissed because Plaintiff does not plead sufficient facts to show the On-duty Defendants disregarded a medical need, and, even if she did, the On-duty Defendants are entitled to qualified immunity. (Doc. 44-1, at 14-15.) Once again, because it is undisputed the On-duty Defendants were performing discretionary duties during the relevant times, the burden is on Plaintiff to show the facts pled establish Hakeem's constitutional right was violated and that the right was clearly established. (See id. at 15; Doc. 47, at 24-25)

1. <u>Constitutional Right</u>

To establish her claim, Plaintiff must show (1) Hakeem had a serious medical need, (2) the On-duty Defendants acted with deliberate indifference to his serious medical need, and (3) Hakeem's injury was caused by the On-duty Defendants' wrongful conduct. <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted); <u>Stalley v. Cumbie</u>, 124 F.4th 1273, 1283 (11th Cir. 2024).

a. *Serious Medical Need*

Whether a medical need is sufficiently serious is an objective inquiry. <u>Stalley</u>, 124 F.4th at 1283. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (citation and internal quotation marks omitted). The Court is satisfied Hakeem had a serious medical need, as his injuries led to death in a matter of hours, and Defendants do not argue otherwise. (<u>See</u> Doc. 35, at 39-40; Doc. 44-1, at 14.)

b. *Deliberate Indifference*

Next, Plaintiff must show the On-duty Defendants were deliberately indifferent to Hakeem's serious medical need, which is a subjective inquiry. <u>See</u> <u>Goebert</u>, 510 F.3d at 1326-27. To meet this standard, "the plaintiff must demonstrate that the

defendant actually knew that his conduct-his own acts or omissions-
put the plaintiff at substantial risk of serious harm." <u>Wade</u>, 106
F.4th at 1253.

> Whether a particular defendant has subjective knowledge
> of the risk of serious harm is a question of fact
> "subject to demonstration in the usual ways, including
> inference from circumstantial evidence, and a factfinder
> may conclude that a prison official knew of a substantial
> risk from the very fact that the risk was obvious."

<u>Goebert</u>, 510 F.3d at 1327 (quoting <u>Farmer</u>, 511 U.S. at 842); <u>see</u>
<u>Wade</u>, 106 F.4th at 1263-64 (Jordan, J., et al., concurring).
"Disregard of the risk is also a question of fact that can be shown
by standard methods." <u>Goebert</u>, 510 F.3d at 1327 (citing <u>Farmer</u>,
511 U.S. at 846). Moreover, "an official's failure to alleviate
a significant risk that he should have perceived but did not" does
not constitute deliberate indifference. <u>Farmer</u>, 511 U.S. at 838.

When a plaintiff alleges multiple defendants acted with
deliberate indifference, "[e]ach individual [d]efendant must be
judged separately and on the basis of what that person knows."
<u>Burnette v. Taylor</u>, 533 F.3d 1325, 1331 (11th Cir. 2008). For
that reason, "imputed or collective knowledge cannot serve as the
basis for a claim of deliberate indifference." <u>Presley v. City of</u>
<u>Blackshear</u>, 650 F. Supp. 2d 1307, 1315 (S.D. Ga. 2008) (quoting
<u>Burnette</u>, 533 F.3d at 1331).

Defendants argue Plaintiff fails to allege sufficient facts
to show which On-duty Defendants were aware of and nevertheless

disregarded Hakeem's injuries.   (Doc. 44-1, at 14.)   The Court disagrees and finds Plaintiff alleged sufficient facts to plausibly show the On-duty Defendants were each aware of Hakeem's need for medical assistance and acted deliberately indifferent to that need by disregarding it.   The Complaint alleges the On-duty Defendants were near Hakeem when he was severely beaten, causing serious injuries to Hakeem, including stab wounds.   (Doc. 35, at 39, 52.)   It further alleges that, in the minutes after the attack, Hakeem and other inmates requested the On-duty Defendants help get Hakeem medical attention.   (Id. at 52.)   Taking these allegations as true, it can be inferred the On-duty Defendants personally saw Hakeem's state, or at the very least were made aware of it by the various requests for help, and were therefore aware of his serious need for medical attention.

The Complaint also alleges the On-duty Defendants flatly ignored requests for medical attention.   (Id. at 52-53.)   Such an utter refusal to respond in any way to serious symptoms is sufficient to show deliberate indifference.   See Patel v. Lanier Cnty., 969 F.3d 1173, 1190 (11th Cir. 2020) (finding deliberate indifference when deputy sheriff failed to provide aid after witnessing symptoms of pretrial detainee's serious medical need); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) (citation omitted) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently

been held to surpass negligence and constitute deliberate indifference."); see also Stalley, 124 F.4th at 1286 (upholding that "the knowledge of the need for medical care and intentional refusal to provide that care" amounts to deliberate indifference under criminal recklessness standard); Wade, 36 F.4th at 1328 ("[I]t is clearly established that an officer cannot ignore an individual's serious medical condition . . . .").

Based on the foregoing, Plaintiff plausibly alleges the On-duty Defendants each acted with deliberate indifference to Hakeem's serious need for medical attention by flatly ignoring Hakeem's and other inmates' requests for help despite Hakeem's state being so severe that death was just a few hours around the corner.

c. *Causation*

"The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm." Goebert, 510 F.3d at 1327 (citing Cottone, 326 F.3d at 1360). Causation "can be shown by personal participation in the constitutional violation." Id. (citing Zatler, 802 F.2d at 401).

Defendants argue Plaintiff does not allege how the On-duty Defendants' actions caused injury to Hakeem. (Doc. 44-1, at 14.) However, Plaintiff alleges each of the On-duty Defendants were aware of Hakeem's state, yet failed to act. (Doc. 35, at 52-53.) Further, Plaintiff alleges the On-duty Defendants' failure to

provide timely and adequate care to Hakeem resulted in life-threatening complications and, ultimately, his death. (Id. at 40.)    Thus, Plaintiff has sufficiently alleged the On-duty Defendants' failure to take any action caused the violation of Hakeem's Eighth Amendment rights.    Nonetheless, to state a claim Plaintiff must also show the right was clearly established.

  2. Clearly Established

    Plaintiff argues the On-duty Defendants are not entitled to qualified immunity because the law is clearly established. (Doc. 47, at 24-25.)    As laid out above, a plaintiff may prove a right is clearly established in three ways: "1) case law with indistinguishable facts"; "(2) a broad statement of principle within the Constitution, statute, or case law"; or "(3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Hill, 797 F.3d at 979 (citation omitted).    It is well established under Eleventh Circuit case law that doing nothing in the face of a serious medical need, as Plaintiff has alleged here, is unconstitutional. See Patel, 969 F.3d at 1191; Ancata, 769 F.2d at 704; Wade, 36 F.4th at 1328. Thus, the On-duty Defendants are not entitled to qualified immunity for Count Four, and Defendants' motion to dismiss Count Four is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 44) is **GRANTED** as to Counts One, Two, Three, and Five and **DENIED** as to Count Four. Plaintiff's remaining claim, Count Four, may proceed.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of March, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

39